TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: YAZ-B-B

---



FROM: 10579062
TO:
SUBJECT: 2241_Stilley1MtnIFP&ServiceBrf
DATE: 12/27/2018 07:02:17 PM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI

OSCAR STILLEY 10579-062                                  PLAINTIFF  3:19 cv 6 HTW-LRA

V.        CASE NO. _____

MATTHEW WHITAKER, ET AL                                  DEFENDANTS

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SERVICE OF COMPLAINT, FOR RULE/POLICY
CHANGE ALLOWING SUBMISSION OF IFP APPLICATION AFTER FILING, AND FOR POLICY
CHANGE SUCH THAT SERVICE OR WAIVER OF SERVICE IS ROUTINELY PROCURED BY THE
CLERK'S OFFICE, FOR PRISONER COMPLAINTS

Comes now Plaintiff Oscar Stilley (Plaintiff) and for his brief in support of motion states:

Plaintiff was an attorney on the street for some 19 years before coming to prison on a 15 year prison sentence. Plaintiff prepared the complaint in the present case, mailed it to the clerk's office for filing, with a cover letter explaining that a $400 check would be forthcoming. Postage for the envelope was $8.50. The envelope contained 2 books of stamps for the convenience of the court, plus a stamped self addressed envelope to Plaintiff's mother, with which to inform her of the case number. Plaintiff also explained that the process could be expedited with a text or email to Plaintiff's mother, providing her with the case number to put on the check.

Plaintiff is not wealthy - far from it. Plaintiff simply knows that the "discount" for being "indigent while incarcerated" is a mere $50, or 1/8 of the customary filing fee. While the ability to pay over time is sometimes beneficial, it is also a trap. Plaintiff uses Trulincs for his legal drafting, at a cost of $3 per hour. Without commissary money, Plaintiff cannot write anything AND EDIT LATER.

These facts hopefully help to explain Plaintiff's multiple offers to donate goods and services to the DOJ-FBOP for the use of inmates. The DOJ-FBOP may well generate $9,000 per annum in revenue, on a cheap computer that gets 3,000 hours of paid use. If inmates were allowed to donate computers, software, tech support, etc., they could get the use of vastly better computers and software, at a fraction of the cost. The taxpayers would then have the benefits of educational resources, at NO COST TO THE FEDERAL TREASURY.

Plaintiff's complaint was returned under a memorandum dated 12-14-18, which did not identify the "deputy clerk" involved. Plaintiff called the clerk's office and talked to "Kim," who said she was the clerk who handled this mailpiece. Kim explained that there was a policy to the effect that complaints without A CHECK for $400, or an IFP application, would be returned. Plaintiff gently explained that his experience was that an acceptable IFP form would be returned, giving the plaintiff time to either file IFP or pay the filing fee. Kim said there was a policy against this at the Jackson clerk's office. Plaintiff can't find any written policy to this effect.

Kim also said that neither the Clerk's office nor the Marshal Service office would serve the complaint, seek waiver of service, or cause the complaint to be served. Plaintiff reviewed the local rules of the court. Local Uniform Civil Rule (L.U. Civ. Rule) 4 (b) provides:

> (b) SERVICE. The United States Marshal does not serve process in civil actions except on behalf
> of the federal government, in actions proceeding IN FORMA PAUPERIS, on writs of seizure and
> executions of judgment, and when otherwise ordered by a federal court.

Plaintiff is perfectly capable of preparing proper documentation for purposes of service. Plaintiff has done this plenty of times, personally or through his own personnel. Plaintiff will, if so directed and provided with sufficient forms, gladly fill out the forms USM 285 and the summons to go with the complaint. However, that doesn't necessarily make sense. Plaintiff is denied the tools to create professional and proper documents. Amongst the matters complained of in the Plaintiff's complaint is the repeated persecution of Plaintiff for trying to DONATE, or otherwise gain access to, computers, software, office supplies, etc.,

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: YAZ-B-B
------------------------------------------------------------------------

with which to assist in the education of less fortunate inmates, as well as to produce quality legal documents.

Plaintiff gets plenty of PROMISES of FUTURE PERFORMANCE. Some wonderful but unidentified day, Plaintiff is told that he will live in a prison where there are plenty of computers, with which he can teach basic skills effectively. For the time being, though, Plaintiff lives under the threat of being written a "shot," (formal disciplinary incident report) losing privileges and good time, and going to SHU (Special Housing Unit, or jail for the prison), merely for setting foot in one of the classrooms in Education during normal business hours. See Plaintiff's Verified Complaint page 37, paragraphs 611 through 617.

Plaintiff has laid out his economic situation. Plaintiff's mother holds about $600 in trust for the Plaintiff, with which he intended to pay the $400 filing fee, with the rest to be used for Trulincs. Plaintiff often uses well over $200 for Trulincs for a single month, so that $200 won't go very far. As of 12-26-18 Plaintiff has just over $60 on his commissary account, which will be supplemented by the $200 from his mother that isn't needed for the filing fee, in the near future. Plaintiff has what he assumes to be about $300, maybe a little less, in a personal checking account, which he can't reasonably access at the present time due to the strictures of incarceration. Plus, the bank charges a monthly fee, which means that Plaintiff probably has enough to keep the account open, so that he will have some continuity when he gets out of prison.

Plaintiff planned to pay for the filing fee by check, as the court can see. When Plaintiff's mother read the memo to him, he told his mother to put a $400 check payable to the clerk in the mail, with "Stilley complaint" in the subject line. Kim informed Plaintiff that the complaint must be together with the check. In other words, neither an early check or a late check would be acceptable, regardless of the explanation. If this is not true generally or not true in Plaintiff's case, he'd like to know.

Plaintiff explained to Kim that it is impossible for him to get his mother to send a $400 check TO PLAINTIFF. A check won't be allowed to come in through the prison mailroom. The custom and practice of this court clerk's office virtually mandate the filing of an IFP motion, by an unrepresented incarcerated person, regardless of wealth or ability to pay.

Since Plaintiff is forced to file the motion, spend an additional $8.50 to re-mail the complaint, etc., he would like whatever benefit he can get. Plaintiff requests that IFP status be granted, and that the Clerk be ordered to cause the Defendants to be provided with copies of the complaint and waivers of service, or else simply served with the complaint. Plaintiff prefers economical means of service or substitute for service, but he is willing to pay the fair and reasonable costs, as may be determined proper and assessed by the Court. In most other cases Plaintiff has been involved in as a prisoner, service (or waiver) is procured without any charge additional to the $350 filing fee for indigent incarcerated persons.

It simply is not practical for Plaintiff to serve this complaint, or even to mail it to the Defendants with waivers of service. For one thing, each package requires a multipart form to get permission to mail it, plus $8.50 in postage. Our copier resources are ridiculously inadequate to the task. If Plaintiff was on the street, he would email both the filed complaint, with filemark headers, plus a waiver of service in proper pdf format, so that it could be printed, filled out, and returned appropriately. Federal prison inmates simply don't have access to these resources.

Plaintiff admits that this is a lengthy complaint with many exhibits. An explanation is in order. In the latter years of Plaintiff's practice, he had a national practice, routinely learning and complying with new sets of rules, often for a single case. Plaintiff rarely if ever had a procedural default. Plaintiff depended on the grant of pro hac vice applications. For this and a lot of other reasons, he learned to get the rules and follow them.

The DOJ-FBOP is telling this court and the world that the Plaintiff is incapable of following the rules, on virtually everything that he does. The DOJ-FBOP claims that nearly all of Plaintiff's appeals of disciplinary matters or other administrative remedy matters were procedurally defaulted. The DOJ-FBOP furthermore claims that Plaintiff didn't timely file his request for reconsideration of his FTCA tort claim from the Oklahoma City Transfer Center, where it was for all practical purposes impossible for him to prepare a complaint. In short, the government claims that despite Plaintiff's training and experience, he can't get the "keys to the courthouse" so much as half the time, in any sort of matter for litigation.

Plaintiff's complaint is lengthy primarily because the DOJ-FBOP's administrative remedy process, by and large, is a pure unadulterated fraud. The DOJ-FBOP does not make any substantial effort to settle meritorious claims on a fair and reasonable basis. Nor will it change its unlawful and counterproductive policies that lead to the unnecessary injury and damage to inmates.

Plaintiff remains willing to resolve his legal issues on a fair and reasonable basis. A new Attorney General is in office, who had nothing to do with the bad acts complained of herein. Furthermore, President Trump on the Friday before Christmas 2018 signed a bill calling for "evidence based" recidivism reduction programs. This is music to Plaintiff's ears. No one is more eager than Plaintiff, to work toward effective education at NO COST to the taxpayers, by allowing civic minded minded inmates ACCESS to adequate resources and MOTIVATIONS sufficient to provide OBJECTIVELY VERIFIABLE academic and practical

Case 3:19-cv-00006-HTW-LRA   Document 4   Filed 01/04/19   Page 3 of 3

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: YAZ-B-B
--------------------------------------------------------------------------------

skills to inmates who need them. Honestly, we don't need ANY taxpayer money - most of that is spent on obstructionism anyway. Let inmates have ACCESS to resources and motivations, and we'll gladly pay our own way.

If the DOJ-FBOP is willing to quit persecuting and punishing Plaintiff for trying to teach other inmates basic GED skills, typing skills, writing and editing skills, etc., a great deal of this complaint could be resolved PRIOR TO ANSWER OR RESPONSIVE PLEADING. Plaintiff has repeatedly stated, in writing, that he has a greater concern for competent and reasonable medical and dental care, and for reasonable legal, educational, and religious resources, than he has for money damages for injury suffered. Thus far, Plaintiff cannot even get a substantive response.

That's part of the reason for tables of contents for the complaint and for the exhibits to the complaint, as well as the effort to make the complaint exhibits docket # 1-1, with pagination that coincides with the pagination of the clerk's office set forth in the filemark headers. Much effort was expended to make it easier for this Court as well as the opposing parties and their counsel to effectively UNDERSTAND THE CLAIMS AND ISSUES, and follow the arguments. Plaintiff requires SOME TIME of the Court in order to avail himself of due process as well as the 1st Amendment right to peacefully petition for the redress of grievances. Plaintiff has done his best to show respect for the time and effort of the Court and opposing counsel, and hopes to improve on those efforts as a direct result of this litigation.

Plaintiff respectfully submits that the relief that he requests is reasonable and conducive to justice, judicial economy, and the public reputation of the bench and bar. Plaintiff most respectfully requests that this Court grant the relief sought.

Plaintiff respectfully requests that this motion and brief be served at the same time and in the same manner as the complaint and all exhibits. Whatever and whenever the Court may decide on the specific requests, Plaintiff wants opposing parties to understand Plaintiff's thinking, with respect to both the complaint generally and this motion specifically.

Respectfully submitted,

)
)
By: _____        12-28-18
Oscar Stilley                                Date
FCC Yazoo City Low
PO Box 5000
Yazoo City, MS 39194