TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: YAZ-B-B

---

FROM: 10579062
TO:
SUBJECT: 2241_StilleyAppealDenyService
DATE: 02/04/2019 08:53:23 PM

*     UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF MISSISSIPPI

OSCAR STILLEY, BOP # 10579-062                              PLAINTIFF

V.               3:19-CV-6 HTW-LRA

MATTHEW WHITAKER, ET AL                             DEFENDANTS

    PLAINTIFF'S VERIFIED APPEAL OF
    1) ORDER DENYING SERVICE BY THE COURT OR MARSHAL SERVICE, [DOCKET 5] AND
    2) THE DENIAL OF IN FORMA PAUPERIS STATUS, AND/OR THE FAILURE TO RULE ON
        PLAINTIFF'S IFP MOTION [DOCKET 2]

Comes now Plaintiff Oscar Stilley (Plaintiff) and for his verified appeal states:

1.     Plaintiff on 12-12-18 sent his complaint, civil cover sheet, and 2 books of stamps to the clerk, under cover letter promising the prompt payment of the $400 filing fee. Docket 3, Exhibit "1."

2.     The complaint was returned unfiled. The stamps were sent to Plaintiff's mother, since it is impossible to send stamps to inmates at Yazoo City Low, through the mail.

3.     Thereupon Plaintiff had his mother send a $400 check, requesting the clerk to hold it until the complaint was received.
4.     The complaint was re-mailed 12-28-18 and filed 1-4-19. Docket #1. Plaintiff also included a civil cover sheet, a motion for IN FORMA PAUPERIS status, (Docket #2) a Motion for Service of Complaint, For Rule/Policy Change Allowing Submission of IFP Application After Filing, and for Policy Change such that Service or Waiver of Service is Routinely Procured by the Clerk's Office, (Docket #3) and a supporting brief. Docket # 4. All these pleadings were filed 1-4-19.

5.     The Magistrate entered an order denying said the motion set forth in Docket #3, as Docket # 5.

6.     Plaintiff in a cover letter dated 12-28-18 asked the clerk for a copy of his complaint with filemark headers. Plaintiff said that he would accept 4 pages per page double sided copy, so as to save on printing and postage costs for the clerk, even though such a copy would not be suitable for purposes of service. The complaint with all exhibits exceeds 350 pages.

7.     The Clerk did not send a copy of the complaint or other pleadings with filemark headers, in any format. Nor did the clerk give written reasons for the failure to provide such copies of pleadings.

8.     Although Plaintiff did pay the $400 filing fee, he does not have sufficient money to pay for service.

9.     The complaint raises issues germane to the Plaintiff's liberty, both with respect to multiple losses of "good conduct time" (GCT) and with respect to his right of reasonable access to the courts, so as to file his one direct appeal of his judgment and commitment order, to which he is entitled by law and rule.

10.     The Magistrate says that Plaintiff "has not demonstrated that he cannot effectuate process in this case." Dkt. 5 pg. 3.

11.     Plaintiff has no copy of the complaint, despite polite request for a copy both in the first letter dated 12-12-18, (exhibit "1" to docket # 3), and in the cover letter on the subsequent filing (presumably docket # 1-8). Plaintiff has the source documents, but no exact copies of the exhibits, and no paper copy of the complaint.

12.     Plaintiff inquired of the Clerk's office on a legal call from his prison counselor's office, but was told that they don't provide inmate litigants with copies of pleadings with filemark headers, except upon the payment of either 25 cents per page (in person) or 50 cents per page (by mail). Plaintiff was told that he would not get the originals with which Plaintiff filed the complaint, because they are by policy kept in the clerk's office.

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: YAZ-B-B

---

13. Plaintiff as a federal prison inmate is denied access to PACER, as well as to the internet generally.

14. Prior to prison, Plaintiff would have gotten filemarked copies for free via CM/ECF. Even without the status of "licensed attorney" he could have gotten any filed documents through PACER and/or Recapthelaw, at a cost not to exceed 10 cents per page.

15. Plaintiff cannot SERVE a complaint, when he has no physical copy of the complaint and no online access to the complaint. Furthermore, Plaintiff has shown by his IFP application that he lacks sufficient funds to pay the customary charges for US Marshal Service.

16. The Magistrate's factual conclusions are clearly erroneous, and the Magistrate's legal conclusions are contrary to law.

17. Other district courts routinely assess partial fees for indigent prisoners.

18. The Magistrate did not formally rule upon Plaintiff's IFP motion. Rather, the Magistrate observed that Plaintiff "has paid the $400 filing fee in this action, so he is not proceeding IFP." Docket #5, pg. 2.

19. The IFP application on its face concerns both fees and "costs." The mere fact that an incarcerated litigant shows good faith by paying the full $400 filing fee does not necessarily prove that the litigant is able to pay the "costs" of the action.

20. Even if IFP status is granted, Congress has instructed the courts to collect 7/8 of the full filing fee, or $350, from the indigent inmate. Thus the payment of $400 is not irrational or economically foolish. Rather, such an action saves much administrative effort and expense, and arrives at a conclusion very similar to that of inmates who must pay the fee over a long period of time, by many small deductions from the inmate's commissary account.

21. Virtually every court to address the issue has ruled that an inmate should not be stripped of all funds in order to proceed with an otherwise facially meritorious action.

22. Plaintiff admitted and explained $600 in funds held on his behalf by his mother. Of this sum, $400 has gone to the clerk of the court to file this action, and the remainder has been placed on his commissary account, primarily to finance Plaintiff's use of Trulincs.

23. If Plaintiff's IFP motion is formally ruled upon and granted, Plaintiff is by rule entitled to an order of the Court directing Marshal service of the complaint. FRCivP 4(c)(3) and Local Uniform Civil Rule (L.U. Civ.R) 4(b). Even if the IFP motion is denied, the Court still "may order" marshal service, under either of said rules. Id.

24. In Stilley v. USA et al, EDAR 2:15-cv-163 BSM/BD, the District Court ordered service despite the payment of a $400 filing fee. Furthermore, the clerk of the Eastern District of Arkansas routinely provided filemarked copies of all of Plaintiff's pleadings, with filemark headers on each page.

25. Plaintiff uses Trulincs to message family and friends, and also as a word processor, at a cost of $3 per hour or 5 cents per minute. Printing costs 15 cents per page. Although inmates at Yazoo City Low are PROMISED access to and the use of computers with word processing software, for free, no such computers have been available for approximately 2 years, perhaps longer.

26. As can be seen from Plaintiff's IFP application, $150 per month is a fair approximation of the cost of Trulincs for the past 6 months, or for the entire time shown on the commissary record attached to the IFP application. The Court can also see that Plaintiff's commissary purchases are relatively modest.

27. The loss of Trulincs, due to lack of funds or otherwise, would be utterly devastating to the Plaintiff. Plaintiff in fairness and equity should not be forced to choose between paying for marshal service or maintaining phone and Trulincs.

28. If Plaintiff prevails, he will be entitled to costs. Plaintiff respectfully submits that in the present case justice would be best served by causing Marshal Service to be effectuated at public expense, and addressing the proper allocation of costs at a later date, if appropriate.

29. If the Plaintiff prevails, the easiest course of action with respect to cost of service would be to say nothing, since in that case the cost would be borne by the party ultimately responsible for the cost of service, with or without any judicial order addressing that issue. If Plaintiff loses, the Court has the power to assess costs as justice may require.

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: YAZ-B-B

------------------------------------------------------------------------------------

30. Plaintiff did not receive a copy of the Magistrate's order (Docket #5) until the day after it was re-mailed to the Plaintiff on 1-28-19. See note to Docket entry 6, indicating the mailing of a docket sheet and Docket #5, an order.

WHEREFORE, Plaintiff appeals the order denying docket #3, and requests that the Court:
1) order the US Marshal to serve the complaint without cost to the Plaintiff, issues of costs to be addressed later;
2) grant the general relief requested in Docket #3, to the effect that inmate complaints will be filed without a check or IFP application, with instructions that an IFP application must be submitted within a reasonable, specified time, and that complaints in the nature of "prison conditions" litigation will be served by US Marshal Service upon the conclusion of the screening process, whether or not the prisoner tenders the $400 filing fee;
3) formally rule upon the motion for IFP status, and furthermore grant IFP status;
and for such other and further relief as may be appropriate whether or not specifically requested.

VERIFICATION

Plaintiff by his signature below pursuant to 28 USC 1746 declares under penalty of perjury that the foregoing facts are true and correct.

By: _____     2-5-19
Oscar Stilley                         Date
FCC Yazoo City Low
PO Box 5000
Yazoo City, MS 39194

CERTIFICATE OF SERVICE -- PRISON MAILBOX RULE

Plaintiff by his signature above pursuant to 28 USC 1746 declares under penalty of perjury that on the date stated above he placed a copy of this pleading in the prison outgoing mail receptacle, with sufficient 1st class postage attached, addressed to the clerk of the court for filing and service via CM/ECF.