TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: YAZ-G-A

---

FROM: 10579062
TO:
SUBJECT: 2241_Stilley1MTNPrelimInj
DATE: 03/24/2020 01:18:57 PM



\*         UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF MISSISSIPPI

OSCAR STILLEY 10579-062                                    PLAINTIFF

V.        3:19-CV-6 HTW-LRA

WILLIAM BARR, ET AL                                        DEFENDANT

### PLAINTIFF'S VERIFIED MOTION FOR PRELIMINARY INJUNCTION COMMANDING THE GOVERNMENT TO CEASE AND DESIST FROM OBSTRUCTING PLAINTIFF AND OTHER INMATES SIMILARLY SITUATED FROM ACCESS TO THEIR OWN PROPERTY AND RIGHTS TO PROPERTY, USEFUL AND PROPER FOR THE PREPARATION OF LEGAL PLEADINGS AND PAPERS, ETC

Comes now Plaintiff Oscar Stilley (Plaintiff) and for his verified motion for preliminary injunction states:

1. Plaintiff brings this motion requesting a preliminary injunction commanding the appropriate defendants to permit Plaintiff and inmates similarly situated to receive and use their own property and rights to property, including computers, software, office equipment and supplies, books, and legal pleadings, so as to prepare and submit for filing professional quality pleadings and papers, including for Plaintiff an appeal brief in his own criminal case, etc.

2. Alternatively or cumulatively, Plaintiff requests an order commanding the appropriate defendants to allow Plaintiff and persons similarly situated to travel outside the prison camp, to a private employer, whether for profit or charitable, for the purpose of gaining access to the capabilities that would be afforded by the things summarized above, and more fully described at pages 44 through 69 of Plaintiff's complaint. This of course is not requested until it is medically prudent.

3. Plaintiff has in the recent past been entrusted with permission to drive a John Deere "Gator" to pick up trash.

4. Other camp inmates are trusted sufficiently to allow them to drive to Jackson, Mississippi, or its environs. For example, they haul trash away, take other inmates to medical appointments or to the bus station to leave prison, etc.

5. The DOJ-FBOP has no legitimate basis for preventing Plaintiff or other inmates similarly situated from using their own property to prepare creditable legal briefs for a direct appeal, or for papers in other appropriate legal matters.

6. Plaintiff's wife (now ex) tried to send Plaintiff's criminal docket and docket items to Plaintiff at his place of confinement, soon after his arrival at FCC Forrest City Low federal prison.

7. The docket and docket items consisted of about 8,000 or 9,000 impressions, consisting of a full paper box of printed filings, Ibico bound and tabbed.

8. These legal papers were returned to sender.

9. Furthermore, Plaintiff needs the Code of Federal Regulations for the years 2003 and 2005 specifically, and also for other years implicated by the conviction of Plaintiff in US v. Springer and Stilley, NDOK 4:09-cr-43 SPF.

10. Plaintiff needs the law of the state of Arkansas, including but not limited to state statutes, general court decisions, and the official decisions concerning the ethical rules applicable to attorneys at law.

11. Plaintiff needs all versions of the local rules of the Northern District of Oklahoma, (NDOK) both criminal and civil, from at least 2000 to present, in order to effectively preserve his appellate rights.

12. The local rules of the NDOK are critical to Plaintiff's appeal, because they were relied upon to deny Plaintiff a decision on the merits with respect to his motion for judgment as a matter of law, as well as his motion for a new trial, in NDOK 4:09-cr-43 SPF.

13. The DOJ-FBOP charges Plaintiff around $2,000 per year for an exceedingly archaic and limited substitute for a word processor, known as "Trulincs." This fact can be deduced from an examination of Plaintiff's motion for IN FORMA PAUPERIS status, Docket # 2, in which Plaintiff spent $1,020 for Trulincs credit over the 6 month period from June-December of 2018.

14. Plaintiff in the prayer for relief in his Verified Complaint in this case asked for an injunction prohibiting the DOJ-FBOP and its officers from retaliating against Plaintiff, or changing the place or conditions of his confinement without discussion and agreement with Plaintiff. Dkt. #1.

15. The last defendant in this case was served with the Plaintiff's complaint on 10-21-19.

16. Plaintiff was put in SHU (Special Housing Unit, or jail for the prison) on December 6, 2019, (less than 7 weeks later) in retaliation for what plainly amounts to peaceful petition protected by the 1st Amendment to the US Constitution.

17. Thus it appears that the DOJ-FBOP is likely to continue its campaign of intimidation, attempting to dissuade Plaintiff from exercising his constitutional rights, until and unless the Court intervenes with a suitable preliminary injunction.

18. On the morning of 3-3-2020, Plaintiff volunteered to help DOJ-FBOP personnel remove the hard drives from about 250 computers at FCC Yazoo City Medium, 6 or 8 years old, that were being decommissioned due to their age. He was told that Thursday of that week a similar number of hard drives would be removed from computers at the Low, for the same reasons.

19. Plaintiff volunteered to help further after lunch, by sorting and stacking used keyboards, mouses, etc.

20. At the conclusion of his work that afternoon, Plaintiff asked Mr. Brooks, a supervisor in charge of the operation, for 2 Ibico combs left amongst the materials being decommissioned and removed from circulation.

21. Mr. Brooks told Plaintiff that he could put the two Ibico combs in the trash but could not keep them.

22. Plaintiff will as of 4-22-2020 have served two out of three counts of conviction, day for day.

23. Plaintiff was sentenced to the maximum sentence allowed, in the District Court's mind, on 3 out of 3 counts.

24. As to one of the counts of the indictment, Plaintiff was charged because he paid out $250,000 from his IOLTA (Interest on Lawyers Trust Accounts) account, as directed by his client Pat Turner, a dentist.

25. Plaintiff was barred by his oath of office as an attorney at law, from declining to represent Dr. Turner for reasons personal to himself.

26. The deposit of $250,000 into the IOLTA account by Dr. Turner was both lawful and reasonable, in light of the scope of the criminal investigation.

27. Before Plaintiff did any work on Turner's case, the government terminated the criminal investigation, choosing to proceed civilly.

28. Dr. Turner chose to proceed with other counsel in the civil investigation, which was his right to do.

29. Dr. Turner lent the money to Lindsey Kent Springer.

30. After the termination of the representation, Plaintiff had a legal duty, under the criminal and civil laws of the state of Arkansas, as well as attorney ethical rules, to promptly pay the remaining money to the "person entitled" to the money.

31. At no time did Plaintiff pay out such money any person other than the "person entitled" to the money.

32. The possibility of going to prison for having complied with the ethical rules for attorneys, plus state civil and criminal law, by promptly paying the money to the "person entitled" to same, amounts to a reason personal to the lawyer.

33. None of Plaintiff's acts with respect to the Turner count of the indictment involved any acts or omissions within the Northern District of Oklahoma.

34. There is not the slightest evidence that Plaintiff took Dr. Turner's case as anything other than a BONA FIDE case, which was of the kind he normally took, in his own area of expertise and practice.

35. Plaintiff has a meritorious direct criminal appeal not yet litigated.

36. Plaintiff is entitled to freedom from governmental interference from the use and possession of his own property or rights to property, for the purpose of preparing and tendering a well researched, properly formatted appeal brief, etc.

37. During proceedings in the US district court of the Honorable Charles Shaw, in commenting on an appeal by one Jordan Blair, in which Blair's jury verdict was reversed by a panel of the 8th Circuit, Judge Shaw said "I don't think they [referring to the 8th Circuit judges] like you."

38. When Plaintiff arrived at FCC Yazoo City on or about 4-20-18, ASOE Dontae Dennis said that the new computers had already been "on order" for about a year. See Dkt. 1, pg. 65, para. 1,112.

39. Soon after asking for a username and password for the typing practice computers, they were taken out some time during the week of 11-27-2019.

40. Plaintiff has had no access to Arkansas state statutes, decisions, attorney ethical rules, etc, at his current place of confinement, or at any other place of confinement.

41. Plaintiff has about 540 draft Trulincs documents, mostly legal pleadings or papers, all of which is the intellectual property of Plaintiff.

42. Previously, Trulincs, and the "Lexis-Nexis Premium" function, as well as other computer resources to which inmates had access, allowed "cut and paste."

43. At some point in time, "cut and paste" was disabled.

44. The official protocols set forth in the Program Statements require that "draft" documents be kept alive for 180 days.

45. In fact, they are kept alive for only 60 days, and inmates in SHU (Special Housing Unit, or jail for the prison) are denied access to Trulincs, even to re-save draft documents in danger of being timed out.

46. Plaintiff has had Trulincs drafts timed out repeatedly, generally by putting him in SHU, such that he has lost intellectual property that cost him thousands of dollars to produce, all in violation of the DOJ-FBOP's own Program Statements.

WHEREFORE, Plaintiff requests an preliminary injunction commanding the DOJ-FBOP to cease and desist from obstructing Plaintiff, or any other inmate similarly situated, from access to possess and use his or her own property and rights to property, in order to prepare and tender legal pleadings and papers, including but not limited to a proper brief in Plaintiff's direct criminal appeal to the 10th Circuit, etc., as well as for educational or personal use; that the DOJ-FBOP be ordered to undo the disabling of "cut and paste" on Trulincs and other computer functions available to inmates, and furthermore allow inmates to use Trulincs even when they have been placed in SHU, so as to draft legal pleadings, re-save Trulincs documents, etc.; that Plaintiff be allowed to copy and paste text back and forth from his own word processors and/or government word processors; and such other, further, or different relief as may be appropriate whether or not specifically requested.

VERIFICATION

Defendant by his signature below pursuant to 28 USC 1746 declares under penalty of perjury that the foregoing facts are true and correct.

By: _____  3-24-2020
Oscar Stilley                       Date
FCC Yazoo City Camp
PO Box 5000
Yazoo City, MS 39194

CERTIFICATE OF SERVICE - PRISON MAILBOX RULE

Defendant by his signature above pursuant to 28 USC 1746 declares under penalty of perjury that on the date stated above he placed a copy of this pleading in the prison outgoing mail receptacle, with sufficient 1st class postage attached, addressed to the clerk of court for filing and service via CM/ECF.

3