FROM: 10579062
TO:
SUBJECT: 2241_Stilley1RspMTD
DATE: 03/24/2020 12:59:17 PM



\* UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI

OSCAR STILLEY, DOJ-FBOP # 10579-062      PLAINTIFF

V.     3:19-CV-6 HTW-LRA

WILLIAM BARR, ET AL      DEFENDANTS

PLAINTIFF'S RESPONSE TO MOTIONS TO DISMISS [DOCKET NUMBERS 25 AND 27]

Comes now Plaintiff Oscar Stilley (Plaintiff) and for his response to the government's motions to dismiss [Dkt. ## 25 & 27] states:

1. Defendants in this case filed a motion to dismiss [Docket 25] claiming that Plaintiff didn't exhaust his administrative remedies under the Federal Tort Claims Act (FTCA) 28 USC 2671 et seq.

2. Defendant furthermore filed a motion to dismiss [Docket 27] claiming that Plaintiff failed to exhaust ANY of 20 claims represented by other counts of the Plaintiff's Complaint.

3. Neither of these motions to dismiss are supported by adequate competent evidence or legal authority.

4. The government previously filed a motion to extend time for the filing of a responsive pleading.

5. In this pleading, the government claimed that it could not contact Plaintiff by telephone, in conformity with applicable rules, because Plaintiff is a prison inmate.

6. This claim of inability to contact inmates by phone is totally frivolous and wholly without merit.

7. In fact, Plaintiff on 2-2-2020, Super Bowl Sunday, got a telephone call from Mr. Dontae Dennis, Assistant Supervisor of Education, (ASOE) asking Plaintiff to withdraw an administrative request known as a "BP9" asking for reasonable access to educational resources.

8. Mr. Dennis got Camp personnel to summon Plaintiff to Camp general office, from which the call to Mr. Dennis was returned.

9. Furthermore, when inmates try to call the US Attorney's Office from the inmate phones, the office personnel won't take the call. Plaintiff called the US Attorney's office 3 times on Monday, 2-24-20. Twice the receptionist picked up, and promptly hung up. The other time the call went to voicemail, which doesn't allow the inmate to complete the call or leave a message.

10. The government made false representations to the Court, thus allowing the government to get approximately 50 additional days to respond, more than the 60 days normally allowed for the government to respond to a civil complaint.

11. The government then moved to dismiss on the last day of the extended time for responsive pleading, specifically 2-10-2020.

12. The government, in support of its claims for dismissal, has tendered no specific or substantial evidence of any failures to exhaust remedies that are "available" within the meaning of applicable law.

13. The government tendered a declaration from Joshua Robles with respect to the FTCA claims.

14. The government submitted a declaration from Lisa Singleton as to all other claims.

15. Plaintiff in Count 10, at pages 30 and 31, explained how it came to be that the FTCA lawsuit was filed well after 6 months past the original right to sue letter.

16. Plaintiff in the same place set forth facts, under penalty of perjury, showing that he had in fact filed a motion for reconsideration, which would by operation of law extend the time for filing of a civil complaint in federal court.

17. Mr. Robles in his declaration sets forth no facts that contradict Plaintiff's facts.

18. Mr. Robles makes the contention that Plaintiff never filed any administrative tort claim associated with FCC Yazoo City, Mississippi.

19. This is not true, since Plaintiff's date of re-submission of the old tort claim, and submission of the new tort claim, was 6-21-18, and included claims of a continuing neglect and failure to provide reasonable and medically indicated dental care. Dkt. 1-4, pg. 51-57, Complaint Exhibit #165-171. Furthermore, SERO actually sent a copy of the front page of the tort claim back, saying that it was a duplicate. See Exhibit "1" to this motion. All exhibits attached to this motion are incorporated herein as if set forth word for word.

20. Defendant presents no facts or argument sufficient to make a plausible claim that Plaintiff does not have venue at the place of his confinement, for any or all of the counts of the complaint.

21. Plaintiff clearly alleged torts extending up through and including at least some time at FCC Yazoo City.

22. The government's motions to dismiss are made in bad faith, primarily for the purpose of delay.

23. The government summarily claims, by and through the statement of Lisa Singleton, that Plaintiff failed to exhaust ANY of claims set forth in the 20 counts of the complaint not made under the FTCA.

24. This claim could not have been made in good faith.

25. For example, and not by way of limitation, Central Office of the DOJ-FBOP issued a decision in the Ardoin "shot," (formal disciplinary incident report) Exhibit 59 to Plaintiff's complaint, (Pltf. Complaint Exhibits page 99) Dkt. 1-3, pg. 40 of 54.

26. Furthermore, the government has not made the slightest effort to refute any of Plaintiff's allegations of fraud, chicanery, retaliation, and other sharp practices alleged to be sufficient to render further remedies "unavailable" within the meaning of applicable law.

27. The government had a legal duty to prove "beyond peradventure" that Plaintiff had failed to exhaust the administrative remedies "available" to him, within the meaning of the law.

28. The DOJ-FBOP has shown a pattern and practice of ignoring meritorious administrative remedy claims.

29. The DOJ-FBOP has shown a pattern and practice of manufacturing false and fraudulent technical defenses.

30. The DOJ-FBOP has shown a pattern and practice of retaliating against inmates for their reasonable and legitimate administrative remedy requests.

31. Most recently, Plaintiff was sent to SHU (Special Housing Unit, or jail for the prison) from 12-6-2019 to 12-12-2019 for making an offer to donate office/educational supplies, to make up for items stolen from him by DOJ-FBOP personnel, especially referencing 2 Ibico combs stolen off of legal papers by mailroom personnel at the FCC Yazoo City. See Exhibit "2" attached hereto.

32. This trip to SHU was only possible because at least one employee at FCC Yazoo City alleged a fear for their personal safety, either directly or by another employee. Only by such allegation would the investigation be done while Plaintiff was in SHU, rather than while Plaintiff remained in Camp.

33. On information and belief, it was Ms. Foster, an education employee who regularly works at the Camp, who claimed (directly or indirectly) to fear for her personal safety, because Plaintiff's request suggested that since her normal job duties included the proper and authorized receipt of office/educational supplies, she might be a reasonable choice to pick up and bring in donations made by Plaintiff, to make up for thefts by mailroom personnel. See Exhibit "2."

34. This claim is made without any rancor toward Ms. Foster, because he cannot know for certain that she had anything at all

to do with the allegations that resulted in his trip to SHU. Plaintiff is afraid to ask her what she did or what she knows, out of fear of further retaliation for 1st Amendment protected peaceful petition.

35. Plaintiff did see the detention order relied on to put him in SHU on this occasion, but that paper was taken from him, and has not been replaced despite polite request.

36. This trip to SHU was typical in that the apparent purpose was to attempt to intimidate Plaintiff into refraining from making administrative remedy requests, and engaging in other 1st Amendment protected peaceful petition for the redress of grievances.

37. Plaintiff did not attend high school, but rather obtained a GED certificate later.

38. Plaintiff in a 3 year period from fall 1985 to summer 1988 earned a BSBA in Administrative Management from the University of Arkansas at Fayetteville, with high honors, despite skipping the spring semesters of 1986 and 1987.

39. Plaintiff made up the difference with 50 hours of non-traditional credit, mostly but not exclusively through the College Level Examination Program (CLEP). Plaintiff's scores on most of this CLEP credit was in the top 10% of all students taking such tests.

40. Plaintiff earned a law degree in the 2 1/2 years following his undergraduate degree, and was admitted to the Arkansas bar on April 15, 1991.

41. Plaintiff practiced law for some 19 years before coming to prison.

42. During the last 10 years of practice, most of Plaintiff's practice involved following the rules of a number of courts outside Plaintiff's home state of Arkansas.

43. Plaintiff was able to navigate those disparate rules with virtually no procedural defaults.

44. The allegations to the effect that the government has held Plaintiff to zero exhaustions versus 20 failures to exhaust administrative remedies, are meritless.

45. Furthermore, a system that could actually hold an experienced former attorney, with enormous incentive to exhaust administrative remedies correctly, to 0-20, (excluding the FTCA claims) has in so doing proven that the alleged remedies are "unavailable," within the meaning of applicable law.

46. Plaintiff has set forth facts showing many frauds perpetrated against him, to deny Plaintiff a forthright, final, appealable administrative decision as to important issues properly raised by Plaintiff.

47. The government has neglected and failed to explain or refute any such allegations made by Plaintiff under penalty of perjury.

48. By way of example and not limitation, Exhibit "59" to the complaint (Dkt. 1-3 page 40) appears to be a final Central Office (of the DOJ-FBOP) decision with respect to an administrative appeal of a "shot."

49. Plaintiff has furthermore shown that most if not all of the "shots," (formal disciplinary incident reports) transfers from one prison to another, and other adverse actions were the product of retaliation and intimidation, all for the purpose of rendering administrative remedies "unavailable" within the meaning of applicable laws and cases.

50. Plaintiff since his incarceration in 2010 has spent more than 400 days in SHU (Special Housing Unit, or jail for the prison), on hunger strike. This number does not include days spent eating, in order to get back to the prison compound.

51. Most of this time in SHU, on hunger strike, was either directly or indirectly related to the DOJ-FBOP's campaign of harassment, abuse, retaliation, and intimidation of "learned fellow inmates" who help other inmates with legal work. Plaintiff concedes that he "checked in" for the first 4 hunger strikes.

52. Lisa Singleton sent out 5 receipts for administrative remedies, dated 2-1-20. The actual dates were no later than 10-11-19. Plaintiff can't attach these documents because the inmate copier no longer works at all.

53. The government by its motion to dismiss has utterly failed to show entitlement to a dismissal.

54. The government by its motion to dismiss has furthermore shown the lack of any meritorious defense to Plaintiff's claims.

55. Plaintiff relies upon all statements in his complaint, under penalty of perjury, and furthermore relies upon all statements made under oath in a related motion for preliminary injunction.

WHEREFORE, Plaintiff respectfully requests that this Court deny the government's motions to dismiss; and such other and further relief as may be appropriate, whether or not specifically requested.

VERIFICATION

Plaintiff by his signature below, pursuant to 28 USC 1746, declares under penalty of perjury that the foregoing facts are true and correct.

Respectfully submitted,

By: *[signature]*  3-24-2020
Oscar Stilley           Date
FCC Yazoo City Camp
PO Box 5000
Yazoo City, MS 39194

CERTIFICATE OF SERVICE - PRISON MAILBOX RULE

Petitioner by his signature above pursuant to 28 USC 1746 declares under penalty of perjury that on the date stated above he placed a copy of this pleading in the prison outgoing mail receptacle, with sufficient 1st class postage attached, addressed to the Clerk of the Court for filing and service via CM/ECF.

# CLAIM FOR DAMAGE, INJURY, OR DEATH

**INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROVED
OMB NO. 1105-0008

1. Submit to Appropriate Federal Agency:
South Central Reg. Office
DOJ-FBOP
344 Marine Forces Dr.
Grand-Prairie, TX 75051

And; Reg. Director
South East Regional Office
3800 Camp Creek Pkwy SW
Bldg 2000
Atlanta, GA 30331-6226

2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code.
Oscar Stilley 10579-062
FCI Yazoo City Low
PO Box 5000
Yazoo City, MS 39194

3. TYPE OF EMPLOYMENT
☐ MILITARY ☒ CIVILIAN

4. DATE OF BIRTH: 6-27-63

5. MARITAL STATUS: Divorced

6. DATE AND DAY OF ACCIDENT: See attached

7. TIME (A.M. OR P.M.): See attached

8. BASIS OF CLAIM
See attached

Exhibit "1"

9. PROPERTY DAMAGE
NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT: See attached

10. PERSONAL INJURY/WRONGFUL DEATH
See attached

RECEIVED JUN 26 2018 REGIONAL COUNSEL

11. WITNESSES
NAME: See attached

12. AMOUNT OF CLAIM (in dollars)
12a. PROPERTY DAMAGE: 
12b. PERSONAL INJURY: $700,000.00
12c. WRONGFUL DEATH: 
12d. TOTAL: $700,000.00

13a. SIGNATURE OF CLAIMANT: [signed]
13b. PHONE NUMBER: N/A
14. DATE OF SIGNATURE: 6-21-18

STANDARD FORM 95 (REV. 2/2007)


Duplicate Claim
TSCR-2017-00932

FROM: 10579062
TO: ISM/R&D LOW
SUBJECT: ***Request to Staff*** STILLEY, OSCAR, Reg# 10579062, YAZ-G-A
DATE: 12/04/2019 12:09:01 PM

To: Mr. Foster - Re: Items stolen from mail
Inmate Work Assignment: The Tree Man (C. Maint.)

Dear Mr. Foster:

On 11-22-19 I received certain packages from Alys Dimmitt. She included two Ibico combs. I received the papers but not the Ibico combs. I did not receive a copy of any confiscation form, showing a valid reason for confiscating my property. There was no valid reason for confiscating my Ibico combs. The library has official DOJ-FBOP resources with Ibico combs. Ibico combs are sometimes dispensed to inmates for the preparation of legal work.

If I get a confiscation form, I call the act a "confiscation." Confiscation is done openly, under claim of right, properly documented with the specific reason. If my property is taken but no confiscation form is prepared, I call it "theft." If these Ibico combs were taken off for inspection, and someone simply forgot to put them back together, that could be called a "mistake." Generally, mistakes are the things we didn't mean to do, and make up for as soon as the matter is brought to our attention. If the taking of my Ibico combs was a mere mistake or oversight, please by all means say so and explain.

I'm pretty laid back when it comes to the theft of my property. If you'll just arrange to allow me to buy suitable office supplies, to make up for what has been stolen from me, I'll forgive the theft of my Ibico combs. Perhaps Ms. Foster in Education could pick up office supplies from a local store, that I have paid for with my own money, and bring them to me at the prison.

Please let me know your plan, with respect to the Ibico combs which were taken off my material. Please send me a reply within 3 business days, even if your reply is merely an acknowledgment, giving me a time frame in which I can expect a more substantive reply.

Kindest personal regards,
Oscar Stilley

Exhibit "2"