


SOUTHERN DISTRICT OF MISSISSIPPI
FILED
OCT 16 2020
ARTHUR JOHNSTON
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

OSCAR STILLEY, DOJ-FBOP 10579-062                                    PLAINTIFF

V.                              CIVIL NO. 3:19-CV-6 HTW-LRA

WILLIAM BARR, IN HIS OFFICIAL
CAPACITY AS US ATTORNEY GENERAL,  ET AL                    DEFENDANTS


PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATIONS [DOCKET # 37]

Comes now Plaintiff Oscar Stilley (Plaintiff) and for his objections states as follows:

PROCEDURAL BACKGROUND

Plaintiff tendered his complaint for filing in late 2018.   It was returned for the lack of a

filing fee despite a promise of payment of the said fee, upon notification.   Thereupon the cause

was filed 1-4-2019. The full fee was paid up front.

Plaintiff attempted, unsuccessfully, to get the complaint, and particularly the exhibits,

stacked into single pdf documents for PACER.  Plaintiff unsuccessfully sought Marshal service,

and certain other relief, prior to service of the complaint.  Plaintiff gained the assistance of a

friend, who bought a printer at Plaintiff's expense and printed enough copies of the complaint for

service of process.

The government's time for answer didn't start until service of the last defendant.  At that

time the government had 60 days to answer or otherwise respond to the complaint,

The government on 12-10-2019 sought and obtained an additional 50 days to respond, up

through and including 2-10-2020.  Docket # 22.  The motion was granted the following day.

Docket # 23.

1

On the last day for response, the government filed two motions to dismiss.  Docket ## 25, 27, with supporting memoranda. Docket ## 26 and 28.   These motions were fully briefed as of 4-4-2020.

Plaintiff filed a motion for preliminary injunction 3-27-2020.  Docket #30.  This motion was fully briefed as of 4-4-2020, with the filing of two replies.  Docket ## 33, 34.[1]

Some 4 ½ months later, on 8-21-2020, Magistrate Linda Anderson filed a Report and Recommendation "R & R".  This R & R specifically recommends the grant of motions docketed at 25 and 27.  The docket says that it also recommends the denial of Docket # 30, Motion for Preliminary Injunction.  Plaintiff doesn't read the R & R as specifically addressing that motion.  Defendant concedes that the R & R recommends *dismissal*, but contends that the motion filed as Docket # 30 remains for report and recommendation, and final disposition.  This is especially true if, as Plaintiff contends, the government has not shown entitlement to dismissal of *all* of the claims in his complaint.   If Plaintiff has any claims remaining upon the decision of Dockets ## 25 and 27, Docket #30 remains a live and important matter of business before the Court.

Plaintiff received the R & R while on "quarantine." pending release to home confinement. The 14 day quarantine authorized by the US Attorney General was arbitrarily and capriciously extended to 49 days.  Plaintiff left FCC Yazoo City Camp on 9-2-2020, but was required to return to halfway house until 9-9-2020 because his land line telephone didn't work.

Plaintiff and his co-defendant Lindsey Kent Springer were told about home confinement on or about 4-8-2020.  Springer arrived one month later, on 5-8-2020.  Plaintiff actually arrived

---

[1]      Plaintiff's assertion that the government didn't file replies, at page 1 of Docket #36, is erroneous.

to stay at home confinement more than 4 months later.  But for the outrageously long "quarantine," Plaintiff would have long been on home confinement when the Magistrate's R & R was handed down.

Plaintiff previously asked for a 60 day extension of time to object to the R & R.   Docket 28.  Plaintiff explained that he didn't have access to the file, had no access to printing/copying resources, nearly no access to legal research resources, etc.  The government responded, suggesting a lesser extension, "such as September 21, 2020."  Docket 39.  Plaintiff has never received a copy of this pleading in the mail.  This Court by text only docket entry granted an even lesser extension, up through and including September 18, 2020.   The order further stated that "no further extensions shall be granted by this court."

Plaintiff on 9-18-2020 filed another motion for extension, saying that he still didn't have his property, still didn't have access to legal research, had never been served with the Court's order or the government's response, was suffering from serious eye disease, etc.  Plaintiff filed a supporting brief.  Docket # 42.

The government did not respond within the time allowed by this court's rules.   After expiration of such time period, this Court entered another docket text order, on Friday, October 9, 2020, granting an extension of five (5) days, plus two days for proper notice of the order upon the Plaintiff.

Plaintiff received this notice in the mail on Tuesday, October 13, 2020.  He went to City of Faith, his halfway house, in Little Rock, Arkansas, on Wednesday, October 14, 2020, in order to urinate in a cup.  That killed most of the day.

Plaintiff is on home confinement, which means he must either get special permission to

go the Post Office or some private courier, or else get someone else to take it for him.  Not everyone has the ability to put together such an important package, so as to ensure tracking and timely delivery.   Ditto for getting the copies made.  Plaintiff is trying to procure the ability to make copies at home, but doesn't have it yet.  Thus the allegations about certain paperwork, but lack of copies to go with this pleading.

Furthermore, Plaintiff thought he had access to a legal research package, but seems not to have access to cases without paying intolerable prices for each case viewed.  Doubtless that can be fixed - the question being, whether that can be fixed in time to have some modicum of research ability before this pleading has to be printed.  Plaintiff will do his best, but asks for tolerance concerning the inability to do quality research.

It is thoroughly impractical to try to finish the objections in time to rely on ordinary mail. Unless the objections were completed, printed, mailed, and picked up by the postman on  the day of formal notice by mail, there is no reasonable basis for relying on the US Postal Service for timely delivery by first class mail.  Even then, that's not a schedule that a responsible individual would *rely* upon.  That's a schedule based on *probabilities*, which would leave an unacceptable chance of procedural default having grievous consequences.

Plaintiff called the Court Clerk, Mr. Arthur Johnston, who very kindly provided essential information.  Plaintiff must have an ink signature.  There is no way to transmit the ink signature electronically.   NextGen electronic filing is not expected before June of this year, in the Southern District of Mississippi.

In essence, Plaintiff must find a way to send this pleading via overnight delivery. Nothing else satisfies the stated requirements of the Court.   A small Post Office overnight costs

4

$26.35.

That's pretty tough, for an individual fresh out of prison, on home confinement. The challenges for a recently released prisoner are daunting. Money and time are stretched thin. Its really hard to put together a home office in a short period of time, on the overburdened budget of an inmate recently placed on home confinement. Plaintiff freely acknowledges that he got wind of the Court's order from another source, prior to formal service. But this only took a small part of the sting out of the short deadline. Furthermore, due process, and the rules, require formal service in conformity with rules. For example, FRCivP 6 (d) provides:

> (d) Additional Time After Certain Kinds of Service. When a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to), 3 days are added after the period would otherwise expire under Rule 6(a).

Plaintiff is not arguing that the Court cannot order less than 3 days for service. Plaintiff is arguing that 1) an allowance of 2 days for service doesn't make the Post Office move mail any faster, and 2) Five days plus two days, with a requirement that Plaintiff serve ink signed hard copy, essentially guarantees that Plaintiff has inadequate time to prepare a pleading, and *furthermore* must file that substandard pleading at great expense to himself.

The fundamental essence of due process is the right to be heard in a meaningful time and a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319 (1976). The Court's order indeed gives a window of opportunity - but only a tiny one.

Consider the following contemporaneous note Plaintiff made about the great journalist Charles Krauthammer:

> 11-28-19  Thanksgiving - TV - Fox News did a piece on Charles Krauthammer, (who was in a wheelchair for a long time) who apparently just died of cancer - will have

5

to watch further for info on that.  Charles said that when he wrote he 1) made an outline, 2) dictated and had the dictation transcribed, 3) edited that draft at least 15 times, comparing it to sanding and shaping, 4) slept on it, 5) edited again, at which point in time he said he always made numerous indispensable corrections.  In other words, sleeping on the piece was indispensable regardless of the sanding and shaping of the day before.

This sort of work isn't just for the benefit of Plaintiff.  It is for the benefit of this Court, in the form of clearer, more concise, more accurate, more reliable writing.  It is for the benefit of an appellate court should the need arise.  It is for the benefit of the public that finances this court and the public records that it produces.

This litigation is the culmination of 10 years of hard work while in prison, an enormous amount of persecution and abuse by prison authorities, prior preparatory litigation, and expenditures on this case that stretched Plaintiff to near the breaking point.  This litigation is about the Department of Justice's continuing war on due process and fairness in federal criminal litigation.  This litigation has major implications not only for the Plaintiff personally but also for great numbers of other persons, in the custody of their *prosecuting authority*, who are given what often amounts to due process in name only.

The question arises.  Why does the team with the best of everything get all the time it requests, promptly, for the asking, while the disadvantaged team gets a penurious allotment of time on what might well be the most critical pleading in the case?   After nearly 2 years of activity, without so much as an answer to the complaint, is it really necessary to cut the time back to levels that the vast majority of persons in custody simply cannot tolerate?[2]

NextGen is coming soon but not here yet.  NextGen electronic filing for pro se litigants

---

[2]      Plaintiff is still in the official custody of the DOJ-FBOP, despite the home confinement.

will put days back on the clock, and allow free electronic filing of searchable pleadings. The cost

of $26.35 for USPS overnight shipping can easily take bread off the table of an impoverished

litigant. Why not simply relax the schedule somewhat, to ensure that a highly disadvantaged

litigant actually has something approaching a fair chance?

1.    THE FTCA CLAIM WAS PROPERLY EXHAUSTED.

Plaintiff originally misunderstood the government's argument. Plaintiff thought the

government was arguing that Plaintiff was out of time because his requests for reconsideration

either weren't proven or weren't timely. That wasn't the government's argument at all.

At Docket #34, page 1, the government claims "Stilley never filed an administrative tort

claim based on the negligence alleged in his complaint." At page 2 of the same document the

government says concerning Plaintiff's arguments about timeliness that "this assertion is

irrelevant." The government simply argues that Plaintiff didn't exhaust his FTCA claim at all.

The government is mistaken. See Docket 1-4, pages 50-59, Complaint Exhibits 90-92.

Plaintiff did in fact file a tort claim. Plaintiff did in fact receive a "right to sue" letter, Complaint

Exhibit 92. If timeliness is not an issue, (a matter the government concedes) then there can be no

doubt that Plaintiff's FTCA tort claims were properly exhausted, and thus survive a motion to

dismiss.

At page 7 of the R & R, the Magistrate touches upon the same issues. The Magistrate

says that timeliness is not an issue. The Magistrate further said "[I]nstead, it is whether or not

Stilley exhausted his FTCA claims administratively— a prerequisite to establishing this Court's

jurisdiction."

Peculiarly, Mr. Robles in Exhibit "A" to Docket 25-2 includes a list of tort claims,

including TRT-SCR-2017-00932. This same case number is shown on the right to sue letter,

Docket 1-4, pg 59, Plaintiff's complaint Exhibit "92." At the bottom of the letter, on the

following page, Jason A. Sickler, Regional Counsel for the SouthCentral Region of the US DOJ-

FBOP (Department of Justice-Federal Bureau of Prisons) wrote the following:

> You are advised that if you are dissatisfied with our determination in this matter, you are
> afforded six months from the date of the mailing of this communication within which to
> bring suit in the appropriate United States District Court.

Mr. Sickler, a trained lawyer who deals with these issues on a routine basis, clearly thought

Plaintiff had exhausted his administrative remedies.

The Magistrate says "[plaintiff] apparently believes that his suit against the United States

in this case continues from prison to prison, even though the care provided at each place is not

the same." This is true, Plaintiff does believe this to be the case. Plaintiff is right about that -

nobody even attempts to cite authority to the contrary. Furthermore, 28 USC 1391 provides as

follows:

> (e)Actions Where Defendant Is Officer or Employee of the United States.—
> (1)In general.—
>
> A civil action in which a defendant is an officer or employee of the United States or any
> agency thereof acting in his official capacity or under color of legal authority, or an
> agency of the United States, or the United States, may, except as otherwise provided by
> law, be brought in any judicial district in which (A) a defendant in the action resides, (B)
> a substantial part of the events or omissions giving rise to the claim occurred, or a
> substantial part of property that is the subject of the action is situated, or (C) the plaintiff
> resides if no real property is involved in the action. Additional persons may be joined as
> parties to any such action in accordance with the Federal Rules of Civil Procedure and
> with such other venue requirements as would be applicable if the United States or one of
> its officers, employees, or agencies were not a party.

Mr. Robles in his declaration says Plaintiff never filed a tort claim "concerning an

incident or claim associated with FCC Yazoo City, Mississippi." A review of the complaint

shows that the Plaintiff litigating matters raised in a tort claim filed before he even came to FCC

Yazoo City.  Mr. Robles commentary is irrelevant.  This Court can hardly dismiss claims that

Plaintiff never raised.  The issue is whether the claims Plaintiff *actually pleaded* can survive the

Defendants' pending  motion to dismiss.

Transferring a federal prisoner from one prison to another does not erase an otherwise

valid tort claim.  Otherwise, the DOJ-FBOP could arbitrarily eliminate any tort claim liabilities,

for negligence however egregious, by shipping the injured inmate to another facility.  There is no

authority in support of such an irrational and unfair legal principle.

2.    PLAINTIFF'S OTHER CLAIMS WERE ALSO EXHAUSTED.

This proceeding is exhibit "A" for the proposition that the palest ink beats the sharpest

mind.  Plaintiff in previous pleadings was quite mistaken about the nature of the defense

arguments.  The government in its motion as well as the reply was at least as confused as

Plaintiff.  The Magistrate picked up on the mismatched contest between Plaintiff and Defendant,

and (somewhat understandably) came to an erroneous conclusion.

Plaintiff was not idle during the time between motions and rulings, concerning extensions

of time to object.  Plaintiff after some difficulty acquired sufficient printing capability,

whereupon he produced a full set of the docket items, in docket number order.  The filemark

header overlays were somehow missing from some of the pleadings, but Plaintiff nevertheless

created a workable copy of pleadings, Ibico bound for convenient and effective use.

From this administrative/clerical work sprang forth certain beneficial light on the critical

subjects in this case.   There are errors aplenty in the record, but they are not all *material.*  Some

errors can be corrected another day, if at all.  Plaintiff hopes to correct those errors that might be

9

prejudicial to his due process rights during consideration of those matters now properly before the court for decision.

Plaintiff in his complaint raised a number of claims, which he generally organized by category and by date. Consider the following rough summary of claims

1) Attacks on "shots" (formal disciplinary incident reports by prison authorities), complaint counts 1-9;

2) FTCA claims, already addressed herein, counts 10-17;

3) FOIA requests, counts 18-20;

4) DOJ-FBOP administrative remedy requests, 21-28 (#25 also had a statutory/regulatory process prescribed);

Let us now consider what the government has to say about this. The FTCA counts were addressed previously - there is no need to say more about that.

The government presented the verified statement of Lisa Singleton. Docket 27-1. Plaintiff thought she was claiming that Plaintiff had only pursued 23 administrative remedy claims in his entire term of incarceration, waxed indignant, and made his feelings known.

That's not what she said - not at all. The first 11 paragraphs of her statement involved mostly boilerplate about official DOJ-FBOP policy concerning administrative remedies. In paragraph 12 on page 3 she uses 8 lines to claim that Plaintiff had only filed 23 administrative remedy requests *since his arrival at FCC Yazoo City.*

The short answer to this claim is the fact that Plaintiff is not litigating any of those claims. Some of the 23 claims probably won't ever be litigated. The fact that he made a lot of administrative requests, *after* having exhausted all available remedies on previous requests, is

10

completely immaterial.

The only arguable allegation concerning matters in Plaintiff's complaint is a conclusion, set forth as a single sentence in paragraph 13. Paragraph 13 reads as follows:

13. A review of Stilley's administrative remedy history shows that he failed to exhaust his administrative remedies for the claims in his complaint.

That's a straight up conclusion. Perhaps the government would like to sweep 20 counts of a 69 page complaint into the dustbin, with a single sentence - that much is suggested at Docket 29 page 9. If so, the government should cite persuasive authority and argument in response to this objection.

In fact, the government's own arguments and authorities foreclose such a result. See Docket #33, page 3, where the government says that "... general, unsupported statements are insufficient to survive Defendants' motion to dismiss." Truth be told, general, unsupported statements aren't much good anywhere, in legal proceedings.

Ms. Singleton in paragraph 14 claims that "the enclosed documents as provided to the Assistant United States Attorney are true and accurate copies of the original documents created and held during the regular course of business within the Federal Bureau of Prisons." She DOES NOT say that these documents are true, correct, and complete.

Furthermore, Federal Rule of Evidence (FRE) 803(6) provides an exception to the hearsay rule as follows:

(6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:

(A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the opponent does not show that the source of information nor or the method or circumstances of preparation indicate a lack of trustworthiness.[3]

Ms. Singleton fails to include language proving an exception to the hearsay rule. Furthermore, Plaintiff has actually shown circumstances that indicate a lack of trustworthiness.

Start with Ms. Singleton's own words. On 1-16-2020, she claims that Plaintiff had submitted 23 administrative remedy requests as of that date, since his arrival at FCC Yazoo City. That's a straight-up falsehood, that she almost certainly *engineered*, for nefarious reasons, and *had to know about*. Ms. Singleton admits, at paragraph 3 of her Declaration, that she is "responsible for processing the administrative remedy requests that the inmates file at the institutional level."

Plaintiff doesn't yet have a copier or other imaging system set up, so as to make copies. It's coming soon - it just isn't operational now, and Plaintiff doesn't have time to take out for setting it up.

On 2-12-2020 the Administrative Remedy Coordinator (ARC) issued 5 receipts to Plaintiff. The forms don't have the name of the ARC, but presumably that's Ms. Singleton. If not perhaps the government can provide enlightenment in their response to these objections. The

---

[3]      The grammar is wrong but the point should be clear. Plaintiff wasn't sure what text to delete to make this clause conform to the current language of the rule.

remedies were as follows:

| NUMBER | SUBJECT |
|--------|---------|
| 1005088 | Trulincs |
| 1005089 | Education - other |
| 1005090 | Education - other |
| 1005091 | Institution clothing and services |
| 1005092 | Other complaint against staff |

These dates are materially false.   Plaintiff has these files.  They were signed and submitted 10-11-2019.  Ms. Singleton simply refused to timely process them, despite full knowledge of the rules, and the requirement for prompt processing.

It gets worse.  Plaintiff still does not have responses from the warden, more than a year later.  Plaintiff has spoken to the warden personally.  Many months ago Warden Reiser said that he would respond in a few weeks.  He still has not responded.

Without a response, Regional will not process an appeal.  It is a total waste of time.  You can explain all your efforts to get a decision from the warden, the fact that you can't get it - anything you want to explain.  Regional will ignore the explanation and reject the appeal.

That's how FCC Yazoo City puts inmates into a simple dead end.  Perhaps you could call it a "pocket veto."  The warden knows that the inmate is right, but he doesn't want to change his evil ways.  The warden knows that if he *DENIES* the request, inmate will appeal and might win.  Therefore he simply ignores the request.  That is the safest and surest way for him to get a lawless "win."

Plaintiff was approached by counselor Mr. Alvarez, who asked Plaintiff to withdraw

13

certain administrative remedy requests. Plaintiff's contemporaneous note reads as follows:

> 8-31-20 Monday - Mr. Alvarez came, asked me to withdraw BP9s on education, breakfast, 8:30 PM yard recall, yellow jumpsuits. Nothing on the table on any BP9. I asked what remedies were available on home confinement, both as to existing and new claims. Alvarez acted surprised that it was more than 14 days quarantine.

The BP9 on 8:30 PM yard recall was submitted 11-15-19. The others were all included in the aforementioned list of 5 administrative remedies. Query. Just how long does the Plaintiff have a duty to continue on with this absurd charade, in order to get "keys to the courthouse?"

From this the Court can draw the following conclusions. First, the government's records of administrative remedy requests are thoroughly unreliable and thus don't qualify for any exception to the hearsay rule. Second, what Ms. Singleton says should be discredited because she is not honest and competent in the processing of administrative remedy requests. Third, FCC Yazoo City routinely engineers its own simple dead ends to disfavored administrative remedy requests, for which there is no usable workaround except simply filing suit.

Those administrative remedy claims are not, technically speaking, before the court. The Warden still has the chance to do the right thing, be honest, and grant these requests. Or, he can continue on with his contumacity and bad faith, "stiff-arming" the Plaintiff so he can't get an appealable ruling. The choice is his.

That brings us back to the matters that *are* before the Court. The defendants bear the burden of proof, which they most certainly have not borne. Consider for example Count 25. Plaintiff submitted the relevant BP9, BP10, and BP11. On page 52, Plaintiff explained how he had attempted to exhaust remedies, only to be told he had no remedies anywhere. At Exhibit 119, Plaintiff attempted informal resolution and was told, on the form "cannot be answered at

14

this institution." He appealed to Regional, which rejected the form and said "you should have filed at the institution." The responsible institution personnel had already stated that the institution could not provide an answer.

On 8-3-18 Plaintiff sent a letter to the Administrative Remedy Coordinator, which was ignored. Exhibit "122." Plaintiff thereupon appealed to Central Office of the DOJ-FBOP. Central Office responded as folows:

> CONCUR WITH RATIONALE OF REGIONAL OFFICE AND/OR
> INSTITUTION FOR REJECTION.  FOLLOW DIRECTIONS
> PROVIDED ON PRIOR REJECTION NOTICES.

Fascinating! Central Office wants Plaintiff to follow the instructions of Regional or the Institution, despite the fact that those two instruction sets are utterly contradictory and incompatible with each other. So which one should Plaintiff follow? Plaintiff can pick his poison, but cannot get an appealable order from Regional no matter what. Plaintiff's efforts will simply go in a circle until Plaintiff sees the light and gives up.

None of the rest of the counts are any better for the government. The government hasn't tried to actually shoulder their burden of proof. Their "proof" is a single conclusory sentence from a thoroughly incredible witness. Plaintiff has set forth, under oath, facts which unless effectively rebutted establish his right to litigate the matters raised by administrative remedy.

Plaintiff has alleged FACTS showing that he is repeatedly persecuted and abused for the exercise of his 1st Amendment peaceful petition, and other 1st Amendment protected activities. In addition to all the former persecution and abuse, Plaintiff was sent to SHU, apparently by his Case Manager Ms. Gilstrap, in early 2020. Plaintiff never got paperwork giving a reason for the detention, but Ms. Gilstrap called him to the front office, whereupon he was told to have a seat,

whereupon an officer soon arrived to take him to SHU. That retaliatory strike cost Plaintiff some 14 days in SHU. Contemporaneous notes would allow better specificity, but Plaintiff is out of time.

Defense counsel can read the complaint as well as anyone else. The relevant facts are stated, under oath. See e.g. Count 27 of the Complaint, Docket #1 page 58. By the Defendants' own admission, those facts are presumed true for purposes of this motion to dismiss. The Defendants don't even attempt to argue that such facts and circumstances, if true, don't constitute unlawful retaliation. They simply dismiss Plaintiff's claims as "unfounded conspiracy theories and unsupported accusations." If this was really the case, some government employee should be able to rebut the actual facts stated, rather than attempting to sweep everything away with a single conclusory sentence.

Plaintiff isn't sure how much abuse is enough abuse, to qualify under the case law. If the Court deems Plaintiff's evidence insufficient, Plaintiff respectfully requests an opportunity for discovery. This is the customary practice, when a motion to dismiss is converted to one for summary judgment. It would not be fair to grant summary judgment without giving Plaintiff an opportunity to marshal his own evidence.

WHEREFORE, Plaintiff respectfully requests that the Magistrate's Report and Recommendation be overruled in its entirety; and such other and further relief as may be appropriate whether or not specifically requested.

By: _____          October 15, 2020

16

Oscar Stilley
101 Martin Street
Fort Smith, AR 72908
479.384.2303 mobile
oscarstilley@gmail.com

CERTIFICATE OF SERVICE

Plaintiff by his signature above pursuant to 28 USC 1746 certifies that he on the date stated above he caused the Defendants to be served by depositing a copy of this pleading, properly addressed, in the hands of USPS or some other provider of expedited delivery services, with sufficient postage/shipping cost prepaid, for OVERNIGHT DELIVERY, addressed to the clerk of the court for filing and service via CM/ECF.

17